UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OLIVIA MARIE HESS | * | CIVIL ACTION |
| VERSUS | * | NO. 22-5305 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | * | SECTION "E" (2) |
| | * | |

## REPORT AND RECOMMENDATION

Plaintiff Olivia Marie Hess seeks judicial review pursuant to section 405(g) of the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Olivia Marie Hess is a now 62-year-old woman with relevant work history as a personal care attendant. *See* Administrative Record, ECF No. 13 (hereinafter, "Rec."), at 42-44, 256, 263, 302. On January 5, 2021, she filed applications for DIB and SSI alleging disability commencing on May 30, 2020 (*id.* at 241-50, 251-55, 256-62, 263-69), manifesting as diabetes, high blood pressure, problems with vision, neck, back, knee, hand/wrist/arm, heart, peripheral neuropathy, post-traumatic stress disorder, and migraine headaches. *See, e.g., id.* at 295; *see also id.* at 74, 82, 92, 100.

---

[1] 42 U.S.C. §§ 405(g), 423, 1381a.

The agency initially denied Plaintiff's DIB and SSI applications on June 8, 2021 (Rec. at 90-91, 74-89, 127-35) and on reconsideration on August 17, 2021 (*id.* at 92-107, 108-09, 138-44). Claimant submitted a written request for hearing on August 26, 2021. *Id.* at 145, 151. Administrative Law Judge ("ALJ") Jeffrey Morgan held a hearing on April 19, 2022. *Id.* at 35-55. Claimant appeared and testified at the hearing and was represented by counsel, Laci Hamilton. *Id.* at 35, 38. Karyl Kuuttila, an impartial vocational expert, also appeared and testified at the hearing. *Id.*

On May 18, 2022, the ALJ issued an unfavorable decision denying Plaintiff's applications for benefits. Rec.at 7-21. Claimant requested Appeals Council review and sought more time before the Appeals Council acted on her case, which the Appeals Council granted. *Id.* at 27. The Appeals Council denied her request for review on October 13, 2022, rendering the ALJ's decision the final decision of the Commissioner for purposes of this Court's review. *Id.* at 1-5.

Plaintiff filed this suit on December 16, 2022. ECF No. 1. In accordance with Rules 6 through 8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) and this Court's April 18, 2023 Order (ECF No. 14), Plaintiff filed a motion for summary judgment on July 18, 2023 (ECF No. 18), the Commissioner filed a response on September 6, 2023 (ECF No. 22), and Plaintiff filed a reply on September 20, 2023 (ECF No. 23).

## II.    STATEMENT OF ISSUES ON APPEAL

Claimant identifies one issue on appeal: "Whether The ALJ departed from the relevant medical opinions without obtaining an expert medical opinion to fill the gap." ECF No. 18-1 at 1.

## III.    ALJ's FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings in his ruling:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since May 30, 2020, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: arthropathy with degenerative disc disease of the lumbosacral and cervical spine; degenerative joint disease of the knees; diabetes with nephropathy and neuropathy; and hypertension with cardiomegaly and headaches (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this individual is able to occasionally climb, stoop, kneel, crouch, crawl, and balance when walking on narrow, slippery, or uneven surfaces.

6.  The claimant is capable of performing past relevant work as a "companion." This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Rec. at 12-21.

## IV.   <u>FACTUAL BACKGROUND</u>

Plaintiff filed applications for SSI and DIB on January 5, 2021, alleging disability commencing on May 30, 2020.  Rec. at 255; *see also id.* at 241-69.  Her Disability Report dated February 24, 2021, indicates that she stopped working during the COVID-19 epidemic on May 30, 2020, when she was laid off and that her conditions did not cause her to make any changes in her work activity.  *Id.* at 295-96.  In her Function Reports dated March 21, 2022, and July 6, 2021, she described problems standing, stiffness pain from sitting, difficulty lifting things overhead, pain in lower back, knee swelling, stress from Hurricane Katrina and COVID.  *Id.* at 282-89, 310-17.

Claimant indicated she lives alone in a house, feeds and lets her pets out in the yard, can dress herself but needs to sit down to avoid losing her balance, can bathe herself while holding a

shower handle and wash her hair, and does not need reminders to take medicine or for personal care needs. Rec. at 282-89, 310-17. She further indicates that she can drive and does drive to doctor appointments, to the grocery twice a month, and to pay bills, but she does not otherwise go out due to the COVID-19 virus. *Id.* She can manage her finances (i.e., count change, pay bills, handle a checkbook and savings account), which has not changed since before conditions began. *Id.* Her son does her yard work because she gets out of breath pushing the mower, and she can only walk a block before she needs to rest for 10-15 minutes. *Id.* She has to sit to wash dishes or iron, and she washes clothes every two weeks. *Id.* She can pay attention for 25-30 minutes and follow oral instructions if she understands them but cannot follow written instructions. *Id.*

### A. **Plaintiff's Hearing Testimony**

At the April 19, 2022, hearing, Hess testified that she has a high school education and most recently, from 2011 through May 2020, worked as a personal care attendant with Visiting Angels. Rec. at 42-43. She stated that, when she stands up or sits for too long, her right side knee and ankle swell, she has diabetic neuropathy that causes numbness to her hands and feet, back and neck pain, migraines. She also has an enlarged heart. *Id.* at 52. Hess denied having any surgical procedures but testified that she takes insulin and pills for her diabetes, Gabapentin for the pain, and another medication for the migraines. *Id.* at 45-48. She also testified that she takes Hydroxyzine for mental health impairments. *Id.* at 49-50. Hess described living alone with her dogs and going to the grocery store, but testified that she cannot perform household chores like laundry without getting out of breath. *Id.* at 50-52. She drives to the doctor and grocery, but denied attending church or visiting friends. *Id.* at 52.

**B.  <u>Vocational Expert Testimony</u>**

Before beginning the examination of vocational expert Karyl Kuuttila, ALJ Morgan asked Ms. Kuuttila to advise if any opinion she rendered conflicts with the Dictionary of Occupational Titles. Rec. at 53.  After stipulating to Ms. Kuuttila's qualifications, ALJ Morgan asked Ms. Kuuttila to address Plaintiff's relevant work history.  Ms. Kuuttila testified that a personal care attendant (called a companion) would be classified as DOT 309.677-014, light work with specific vocational preparation ("SVP") of 3 (semi-skilled).  *Id.* at 54.

The ALJ posed two hypotheticals.  The first hypothetical involved an individual of the same age, education and work history as Claimant but who could only occasionally climb, stoop, kneel, crouch, crawl, and balance when walking on narrow, slippery or uneven surfaces.  When asked whether such a person would perform Plaintiff's past relevant work, Ms. Kuuttila testified that such a person would be able to perform Plaintiff's past work, both as actually performed and as generally performed.  *Id.*  The second hypothetical added that such person would be off task 15% of the workday in addition to normal breaks.  When asked whether that would alter her opinion, Ms. Kuuttila confirmed it would.  She then testified that such person would be precluded from all competitive work in the absence of accommodation from the employer.  *Id.*

Claimant's counsel did not ask any questions of Ms. Kuuttila.  *Id.*

**C.  <u>Medical Evidence</u>**

I have reviewed the medical records and the ALJ's summary of the medical evidence. Rec. at 13-20; *see also* Rec. at 366-1239.  The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

**D.  The Appeal**

Claimant argues that the ALJ improperly used his own lay interpretation of raw medical data to depart from the state medical consultants' medical opinions on limitations to conclude that she could perform light work with not only postural limitations of occasional climbing, stooping and crawling but with the added postural limitations of kneeling, crouching, or balancing when walking on narrow, slippery, or uneven surfaces.  ECF No. 18-1 at 2-4; *see also* Rec. at 19.  These additional limitations, Claimant argues, were improper because no medical expert addressed her ability to kneel, crouch or balance and the ALJ imposed those conditions based on his own interpretation of raw medical data from a medical visit that took place after the medical consultants rendered their opinions.  ECF No. 18-1 at 3-4.  Claimant similarly argues that, when addressing the severity of her alleged limitations, the ALJ improperly found her to have mild limitations in each of the four functional paragraph B areas whereas the medical opinions reflected mild limitations in only two areas (concentration, persistence or pace and adapting or managing oneself) but no limitations in the others (understanding, remembering or applying information or interacting with others).  *Id.*

Claimant contends that, after the ALJ credited her complaints of difficulty standing due to knee pain, he reviewed raw medical data from later visits to include additional postural limitations (balancing, kneeling and crawling) but placed no limitations on standing.  *Id.* at 4.  The ALJ's imposition of these additional limitations, she argues, is an improper attempt to address impairment-related functional deficits without supporting medical opinions.  *Id.* at 3-5.  Claimant asserts that the ALJ relied on his lay interpretation of medical data to determine Plaintiff's RFC and imposing postural limitations without any medical support, and this constitutes a failure to develop the record which she contends prejudiced her because, had she been unable to perform

6

her past relevant work, she would have been found disabled. *Id.* at 6, 8-9. Claimant thus argues remand is necessary to develop the record and obtain a medical opinion to fill the gap. *Id.* at 9.

In contrast, the Commissioner argues that the determination of RFC is an administrative assessment based on the totality of the evidence and the ALJ properly determined her RFC based on credible medical, testimonial, and documentary evidence. ECF No. 22 at 4. Specifically, the ALJ expressly noted his consideration of the entire record, which included medical evidence with no significant conflicts as well as Claimant's testimony, but the ALJ found Plaintiff's testimony not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 5, 6-7. Contrary to Plaintiff's assertion that the ALJ failed to develop the record, the Commissioner argues, the ALJ properly interpreted the medical evidence to determine Claimant's capacity to work. *Id.* at 6. Citing the ALJ's detailed summary of Plaintiff's medical visits, the Commissioner notes that the ALJ correctly concluded that Plaintiff failed to establish a disabling limitation given the conservative treatment and largely intact examination findings in the record. *Id.* at 7-8. Further, the Commissioner argues, the ALJ properly assessed the persuasiveness of the medical opinions considering supportability and consistency and rendered an RFC that accorded greater weight to the medical evidence than Plaintiff's subjective complaints. *Id.* at 9-11.

The Commissioner argues that the evidence of record is sufficient to support the ALJ's RFC determination, and thus, the ALJ had no obligation to develop the record further to satisfy Plaintiff's burden of proving that she was disabled. *Id.* at 12. Even if the ALJ had committed error, the Commissioner contends, Plaintiff did not suffer any prejudice because she fails to demonstrate that she could have and would have adduced evidence that might have altered the result. *Id.; see also id.* at 15-16. Contrary to Plaintiff's argument, the ALJ's role of factfinder

does not obligate him to obtain the RFC directly from a medical opinion because an RFC assessment is not a medical opinion. *Id.* at 13-14.

In Reply, Claimant argues that the ALJ's additional limitations premised on evidence in the medical records from visits after the medical opinions oversteps the ALJ's bounds in determining Claimant's RFC and constitutes impermissible "playing doctor." ECF No. 23 at 1-2. She further argues that the additional limitations do not appropriately address the noted additional finding of greater difficulty standing than that expressed by the medical sources, and the ALJ should have obtained updated medical opinions. *Id.* at 3-4. Claimant concludes that the ALJ must rely on objective medical evidence as to her limitations and is not entitled to rely on raw medical data to increase limitations in the RFC. *Id.* at 4-5.

## V. APPLICABLE LAW

### A. Standard for Determination of Disability

A claimant seeking DIB and SSI benefits must prove that he is disabled within the meaning of the SSA.[2] To qualify as a disability, a claimant must have physical or mental impairment[3] that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[4] The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[5] Thus, to be considered disabled and eligible for benefits,[6] the Claimant must prove his disability by establishing a physical or

---

[2] *Hollis v. Bowen*, 837 F.3d 1378, 1382 n.3 (5th Cir. 1988).

[3] A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[5] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

[6] The relevant law and regulations governing claims for DIB and supplemental security income are identical. *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[7]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[8] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[9] Before proceeding to steps four and five, the Commissioner assesses the Claimant's RFC and considers his past relevant work.[10] The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[11] When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[12]

**B. <u>Standard of Review</u>**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper

---

[7] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[8] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

[9] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[10] 20 C.F.R. §§ 404.1520(a)(4), (e), (f), 416.920(a)(4), (c)-(f).

[11] *Id.* at 448.

[12] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

legal standards are applied in evaluating the evidence.[13]   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[14]   A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[15]   The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[16]   This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[17]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[18]   The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[19]

## C. Determination of Residual Functional Capacity

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c).  In making that assessment, the ALJ considers not only medical opinions but all of the

---

[13] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhar*t, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[14] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[15] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[16] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[17] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[18] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[19] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

relevant medical and other evidence.  20 C.F.R. §§ 404.1513(a), 416.945(a)(3).  In this context, evidence is anything the claimant or anyone else submits or that the ALJ obtains relating to the claim. 20 C.F.R. §§ 404.1513(a), 416.913(a).  The ALJ "has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence,"[20] considering "the totality of evidence in the record" including the claimant's "medical history, medical signs and laboratory findings, statements about the impact of symptoms, daily activities, medication, and other treatment."[21]

Under the current regulations, ALJs. do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."[22]  Moreover, there is no requirement that an ALJ's RFC finding mirror or match a medical opinion.[23]  Rather, it is the ALJ's duty to interpret the medical evidence along with other relevant evidence to determine a claimant's capacity for work.[24]  In *Ripley*,[25] the Fifth Circuit explained that an ALJ can determine a claimant's RFC even without a medical opinion addressing specific functional limitations, provided that the remainder of the record evidence substantially supports the ALJ's determination.[26]  Thus, even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination.[27]  Generally, however, "an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions."[28]  The court's "inquiry

---

[20] *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (internal citation omitted).

[21] 20 C.F.R. § 404.1529(a)–(d).

[22] 20 C.F.R. §404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018).

[23] *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *Myers v. Saul*, No. 20-00445, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021)).

[24] *Id.* (citing *Taylor*, 706 F.3d at 603).

[25] *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995);

[26] *Id.*

[27] *Id.*; *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam).

[28] *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citation omitted).

focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."[29]

## VI.    ANALYSIS

### A.    The ALJ's Five Step Sequential Analysis

In this case, the ALJ conducted the five-step sequential analysis.  The ALJ first found that Claimant Hess had not engaged in substantial gainful activity since May 30, 2020.  Rec. at 12.  He then found that she suffered from four severe impairments (arthropathy with degenerative disc disease of the lumbosacral and cervical spine; degenerative joint disease of the knees; diabetes with nephropathy and neuropathy; and hypertension with cardiomegaly and headaches) and six non-severe impairments (glaucoma/cataracts; right shoulder pain; obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD")).  *Id.* at 13.  The ALJ also determined that Claimant's mental impairments did not cause more than minimal limitations after considering the "paragraph B" criteria, citing to evidence of record including medical records documenting memory and cognitive functioning, calm and pleasant demeanor, use of electronic devices, and insight, judgment and coping exercises).  Consequently, he found that the evidence did not support a finding of more than mild limitations in these categories.[30]

When considering whether Claimant's impairments or combination of impairments meets or medically equals the severity of one of the listed impairments at step three, the ALJ found the lumbar and cervical disc disease impairments did not meet the criteria for listing 1.15 or 1.16 nor did her degenerative joint disease of the knee meet listing 1.18.  Likewise, her hypertension and related symptoms did not meet any of the section 4.00 listings.  The ALJ considered SSR 14-2p

---

[29] *Ripley*, 67 F.3d at 557.
[30] Rec. at 13-14 (citing Exhibits D1F/12, 14, 18, D2F/152, 189, 245-47, D3F/24, DF/6, D5E, D5F/4, 5, 9, 10, D8F/4, 9, 15, 21, D10F/6-7, D11F/65, 158, 244).

and 9.00B5 in conjunction with various listings including 11.14 for peripheral neuropathy and found the impairment did not meet or medically equal those criteria. *Id*. at 14-15.

Before proceeding to step four, the ALJ addressed Claimant's RFC, concluding that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 16-19. The ALJ found the state agency medical consultants' opinions[31] that Claimant could perform a range of light work with postural limitations (occasional climbing, stooping and crawling) *somewhat persuasive*, noting that the later medical records reflect more pronounced degenerative changes in her lumbar region and an unsteady Romberg test. On that basis, the ALJ concluded that Claimant was slightly more limited than initially assessed and determined that her RFC should also include additional postural limitations of balancing, kneeling and crawling. *Id.* at 19. With regard to mental impairments, the ALJ found the state agency's psychological consultants' opinion that Claimant had non-severe mental impairments with mild or no limitations to be *persuasive*. *Id.* at 19.

After determining her RFC, at step four, the ALJ concluded that, although the vocational expert incorrectly classified Claimant's past work as light exertion rather than medium exertion under the DOT classification, Claimant revealed that she actually performed the position in a manner consistent with light exertion. *Id.* at 20 (citing Ex. 4E/6-7). For that reason, the ALJ found that Claimant could perform her past relevant work as actually performed but not as generally

---

[31] State agency medical consultants Paul Wilson, M.D., and Emily D. Eisenhauer, M.D., on initial review and reconsideration, opined that Claimant she could perform light work, including standing for 6 hours in an 8 hour day, except that she could occasionally climb, stoop or crawl. Rec. 79-80, 87-88, 96-97, 104-05.

performed. *Id.* at 20-21. As a result, Claimant was found not to be under a disability. *Id.* at 21. Having so found, the ALJ did not proceed to step five.

**B. Substantial Evidence Supports the ALJ's Decision that Claimant Is Not Disabled**

**1. Claimant Has No Basis to Establish Disability Due to Mental Impairment**

Claimant argues that the ALJ committed error when, in assessing the severity of Claimant's alleged mental impairments, he indicated that she had at most mild limitations in each of the four broad paragraph B functional areas because the medical consultants found mild limitations in only two of the four categories. Rec. ECF No. 18-1 at 3 (citing Rec. at 13). Notably, as the ALJ explained in that portion of his analysis cited by Claimant, his discussion was not an RFC assessment; rather, that discussion occurred in connection with his rating of the severity of mental impairments at steps 2 and 3. As the ALJ expressly stated, the mental RFC used at steps 4 and 5 required more detailed assessment, which he conducted later. Rec. at 14.

Indeed, later in his opinion, in connection with his RFC assessment, the ALJ specifically found that the state agency's psychological consultant's opinion that Claimant had non-severe mental impairments with *mild or no limitations* in the B-criteria functional areas to be *persuasive*. *Id.* at 19. To support that finding, the ALJ cited record evidence demonstrating unremarkable mental health examinations as well as limited behavioral health treatment and psychotherapy. *Id.* He further found Claimant's allegations of severity to be generally inconsistent with the record as a whole. *Id.* Thus, while the ALJ noted, at most mild limitations in each of the paragraph B criteria in assessing limitation in earlier steps, the ALJ accepted and found persuasive the medical consultant's finding that plaintiff had mild to no mental limitations in determining RFC.

Contrary to Claimant's argument, the ALJ did not improperly use his lay interpretation of medical data to assess Plaintiff's alleged mental impairments. Further, even if the ALJ had found

mild limitations in all B-criteria functional areas, Claimant cannot establish any prejudice from that finding nor has she provided evidence to suggest that his earlier discussion of the B-criteria impacted his determination that Claimant was not disabled due to mental impairment, particularly in light of his later express finding that the medical opinion was persuasive and citation to record evidence supporting that finding.  Accordingly, this argument has no merit.

## 2. The ALJ Properly Determined Claimant's RFC Based on All Record Evidence, Including Medical Opinion Evidence

Claimant also argues the ALJ committed error when he imposed additional postural limitations greater than set forth in the state medical consultants' opinions, which he found to be *somewhat persuasive*, when determining Claimant's RFC based on reports from later medical visits.  Specifically, Claimant argues that the ALJ improperly added postural limitations of balancing and kneeling based on later medical records indicating to him that she was slightly more limited due to a combination of diabetic-related symptoms and complaints of difficulty standing relating to knee discomfort.  She argues that the ALJ failed to develop the record because he should have obtained an updated medical opinion to address the later medical developments rather than simply impose additional postural limitations.  *Id*. at 4 (citing Rec. at 19).  That, she argues, is the ALJ's improper use of his lay interpretation of raw medical data in reaching his RFC findings.

The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work."[32]  It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[33]  An individual's RFC

---

[32] *Hill v. Saul*, No. 19-1389, 2020 WL 6370168, at *6 (N.D. Tex. Sep. 29, 2020) (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)), *R.&R. adopted*, No. 19-1389, 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020).

[33] Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.[34]  However, "[t]here is no requirement that an ALJ's RFC finding must mirror or match a medical opinion."[35]

Although some lower courts have expansively interpreted *Ripley* to require remand for additional medical evidence when the ALJ imposes limitations beyond those specified by the medical consultants,[36] other courts have noted the critical difference between outright rejecting all medical opinions before creating an RFC based solely on the ALJ's own interpretation of the medical evidence and an ALJ's finding that a medical source opinion is somewhat persuasive while adding additional limitations.[37]  In *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174 (5th Cir. June 14, 2023), the Fifth Circuit rejected the *per se* approach such as that employed by the former courts:

> [Claimant] . . . appears to interpret a series of district court decisions — not holdings from this court — as stating a per se rule that the ALJ fails to develop the record if: (a) the only medical opinion speaking to the effect of a claimant's

---

[34] 20 C.F.R. at § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

[35] *Nic R. v. Kijakazi*, No. 22-0106, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citations omitted), *R.&R. adopted*, No. 22-106, 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023).

[36] *See, e.g.*, *Kirkland v. Comm'r of Soc. Sec.*, No. 22-759, 2023 WL 3357597 (N.D. Tex. Apr. 25, 2023); *Garza v. Comm'r of Soc. Sec.*, No. 22-168, 2023 WL 4504597 (N.D. Tex. June 6, 2023), *R.&R. adopted*, No. 22-0168, 2023 WL 4626680 (S.D. Tex. July 19, 2023); *Garret R. v. Comm'r of Soc. Sec.*, No. 22-829, 2023 WL 5418301 (N.D. Tex. July 20, 2023), *R.&R. adopted*, No. 22-829 (N.D. Tex. Aug. 22, 2023); *Harris v, Comm'r of Soc. Sec.*, No. 22-487, 2023 WL 5826869 (N.D. Tex. Aug. 22, 2023), *R.&R. adopted*, No. 22-487, 2023 WL 5826975 (N.D. Tex. Sep. 8, 2023); *see also Williams*, 355 F. App'x at 832 n.6 (noting that, while the ALJ has the ultimate responsibility to determine RFC, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003) (recognizing that the ALJ is not permitted to draw his own medical conclusions from data without relying on a medical expert's help.)

[37] *Miller v. Kijakazi*, 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (affirming ALJ's RFC assessment that considered claimant's hearing testimony about her symptoms to find her RFC to be more limited than the prior medical evaluations); *Oden v. Comm'r of Soc. Sec.*, No. 21-264, 2022 WL 1645079 (E.D. Tex. May 23, 2023) (rejecting argument that ALJ's RFC must mirror medical opinions where ALJ did not reject all medical opinions but did impose more limitations in functional abilities than suggested by accepted medical source); *Probst v. Kijakazi*, No. 22-286, 2023 WL 3237435, at *6-*7 (May 3, 2023) (rejecting *Ripley* argument and affirming ALJ decision that considered varied medical opinions to conclude that a more restrictive RFC was proper in light of the record evidence); *Ferguson v. Kijakazi*, No. 21-2262, 2023 WL 2027829 (W.D. La. Jan. 31, 2023) (affirming ALJ's determination based on record evidence finding that claimant retained capacity to work at light exertion level while agency medical consultants opined her ability to work at all exertional levels), R.&R. adopted, No. 21-2262, 2023 WL 2021896 (W.D. La. Feb. 15, 2023).

impairments on her ability to work is provided prior to a significant development in the claimant's condition; and (b) the ALJ does not order a consultative examination to consider that development. We interpret her reply brief as arguing a lesser point that, in this case, an additional medical opinion was needed.

We conclude that any per se rule is inappropriate and instead rely on the duty of an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." "A consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." Indeed, even where the record lacks any medical opinions "describing the types of work that the applicant is still capable of performing," "[t]he absence of such a statement ... does not, in itself, make the record incomplete." Instead, these types of medical opinions are just one of several categories of evidence the ALJ considers in making RFC determinations. See 20 C.F.R. § 404.1513. In fact, "where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."[38]

The Fifth Circuit then endorsed the ALJ's imposition of added limitations beyond those contained in the medical source opinions when, after recognizing the shortcomings of the medical opinions, the ALJ

proceeded to incorporate additional symptoms in imposing her more restrictive limitations — that is, more favorable to [claimant]— than those previously suggested. . . . [T]he applicable regulations support that the ALJ was entitled to find the administrative findings partially persuasive and then use those findings, together with other relevant record evidence, in making her RFC determination. See 20 C.F.R. § 404.1520c (providing Commissioner will determine "how persuasive" it finds medical opinions and prior administrative medical findings); id. § 404.1545(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence." (emphasis added)).[39]

While noting that "a consultative examination regarding [the claimant's] ability to work in her current state might have been helpful, . . . 'we cannot say that "no credible evidentiary choice or medical findings support the [ALJ's] decision."'"[40]

---

[38] Id. at *3 (citations omitted).
[39] Id.
[40] Id. at *4; see also Hughes v. Soc. Sec. Admin., No. 22-2272, 2023 WL 4545152, at *7 (E.D. La. June 28, 2023) (North, M.J.) (affirming ALJ's decision on RFC that incorporated additional symptoms in imposing more restrictive limitations than indicated by medical consultants after acknowledging shortcomings in medical opinions), R.&R. adopted, No. 22-2272, 2023 WL 4545153 (Jul. 14, 2023) (Africk, J.); Nikela H. v. Comm'r of Soc. Sec. Admin., No. 22-939, 2023 WL 6299967, at *4 (N.D. Tex. Sept. 8, 2023) (collecting cases and rejecting argument that ALJ erred

This is not a case where the ALJ completely rejected entirely all medical opinions of record and was left to craft an RFC based solely on his own medical conclusions.  Rather, after finding the state agency medical consultants' opinions *somewhat persuasive*, the ALJ considered additional, later record evidence to add limitations more favorable to claimant.  Even with those added, more favorable limitations, however, the ALJ still concluded that Claimant failed to establish that she had been under a disability.  This was not a *Ripley* error.  The ALJ did not reject[41] entirely all of the medical opinions and independently interprets the raw medical data to craft an RFC based solely on his own interpretation of medical data and without any supporting medical opinion; rather, he found the medical opinions somewhat persuasive and relied on them, coupled with other record evidence, to exercise of his responsibility to determine the Claimant's RFC based on all of the evidence of record.  While his RFC did not mirror the medical opinions, that does not mean that his RFC was not based on substantial evidence.

### 3.  Claimant Has Not Established Prejudice

Even if the ALJ had committed a *Ripley* error, Claimant Hess has not shown prejudice from the alleged error, which is required for remand.[42]  If the ALJ errs for failing to further develop the record, "prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."[43]  Here, Claimant offers nothing other than rank speculation that additional evidence would have been produced that may have led to a different result.

in including additional restrictions in her RFC assessment than set forth in largely persuasive medical opinion), *R.&R. adopted,* No. 22-939, 2023 WL 6300568 (N.D. Tex. Sep. 27, 2023).

[41] *Bednorz v. Kijakazi*, No. 22-111, 2023 WL 6147858, at *6 (W.D. Tex. Aug. 3, 2023) (holding that an ALJ does not "reject" a medical opinion when it finds same partially persuasive and does not "play doctor" when finding a claimant to be less able than a physician recommended), *R.&R. adopted*, 2023 WL 5846804 (Sept. 11, 2023) (same).

[42] *Keel v. Saul*, 986 F.3d 551, 555 n.3 (5th Cir. 2021).

[43] *Ripley*, 67 F.3d at 557 n.22; *see also Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (explaining that plaintiff must "show that [s]he 'could and would have adduced evidence that might have altered the result'" (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984))).

As other courts have noted, "it is difficult to discern how a finding that [claimant] was able to, essentially, perform *fewer* tasks than was suggested in the available medical findings and opinions would be prejudicial."[44]  Likewise, Claimant has not shown prejudice here, nor has she met her burden of showing disability.[45]

## VII.    <u>CONCLUSION</u>

Contrary to Claimant's arguments, the ALJ neither committed a *Ripley* error nor failed to obtain an additional medical opinion.  The ALJ's RFC determination need not mirror a medical opinion, and the ALJ properly considered all of the evidence of record, including the somewhat persuasive state agency medical consultants' opinions, to determine Claimant's RFC.  Even with the additional limitations imposed by the ALJ, Claimant still failed to establish that she suffered from a disability.

The ALJ's decision that Claimant is not disabled was adequately supported by substantial evidence in an adequately developed record as a whole, and the ALJ applied the proper legal standards in evaluating the evidence.  Accordingly, the ALJ's decision should be affirmed.

## VIII.    <u>RECOMMENDATION</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Claimant's Motion for Summary Judgment (ECF No. 18) be **DENIED,** and that Claimant's Complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[44] *Bednorz*, 2023 WL 5846804, at *6.
[45] *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987); *Allen v. Kijakazi*, No. 21-30771, 2022 WL 7265517, at *2 (5th Cir. Oct. 12, 2022) (framing the burden as requiring plaintiff to "present[ ] positive evidence that [plaintiff] is incapable of performing" at the RFC level).

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[46]

New Orleans, Louisiana, this ____20th____ day of October, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[46] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).